<i>Exceptions overruled.</i>

---

## B. FLINT KING *vs.* JOHN W. McEVOY.

One who has consigned spirituous liquors to another to be sold in violation of *St.* 1855, c. 215, cannot maintain an action for the breach of an agreement by the consignee to render an account of sales, pay the value of the liquors sold, and return the residue.

One who receives from an importer, and duly forecloses, a mortgage of a cask of spirituous liquors, which is in the United States warehouse, in bond, and pays the duties and receives the cask of liquors, does not thereby become the importer thereof, within the meaning of *St.* 1855, c. 215, § 2.

CONTRACT to recover damages of the defendant for the breach of an agreement to render an account of sales of spirituous liquors consigned to him by the plaintiff, and to pay the value of the liquors sold, and return the residue. At the trial in the superior court, upon facts proved which are stated in the opinion, *Vose,* J. ruled that the plaintiff was not entitled to recover, and a verdict was returned for the defendant. The plaintiff alleged exceptions.

*I. Story,* for the plaintiff, cited *Breck* v. *Adams,* 3 Gray, 570 ;

*Fisher* v. *Mc Girr*, 1 Gray, 46; *Wynehamer* v. *The People*, 2 Parker's C. C. 421, 437; S. C. 3 Kernan, 450; *The People* v. *Toynbee*, 2 Parker's C. C. 552; *License Cases*, 5 How. (U. S.) 504, 574; *Brown* v. *Maryland*, 12 Wheat. 410, 419.

No counsel appeared for the defendant.

CHAPMAN, J. It appears that in April 1860 the plaintiff, at Boston, consigned to the defendant, a trader doing business in Lowell, a quantity of rum, gin and whiskey, to be sold by the defendant, who was to furnish to the plaintiff an account of sales, pay him the value of what was sold, and return to him what should remain unsold, or the value thereof, at the rates mentioned in a schedule of the goods, made at the time. The action is for neglecting to render the account, to pay for what was sold, and to return or pay for what was unsold. The defence is, that the transaction was in violation of *St.* 1855, *c.* 215, concerning the manufacture and sale of spirituous liquors. This defence must prevail, unless the plaintiff is to be regarded as the importer of a portion of the liquors. *Hubbell* v. *Flint*, 13 Gray, 277.

As to one of the items, the plaintiff contends that he had a right to sell it as importer. It appears that one Sylvester E. Wilson was the importer of the item, named as "$\frac{3}{4}$ pipe palm tree gin;" and that while it was in the United States warehouse, under bond, he mortgaged it with his other property to the plaintiff. It was unbroken, in the original cask or package in which it was imported. The plaintiff took possession of the mortgaged property, and foreclosed his mortgage. But upon these facts we cannot regard the plaintiff as the importer, or as entitled to stand in his place. To import an article is to bring it into the country from abroad. This act had been wholly performed by Wilson. The plaintiff was a purchaser from him; for his mortgage was at first a conditional sale, and by foreclosure it became an absolute sale. The fact that he took it at the warehouse and paid the duties cannot alter the nature of the transaction. The duties entered into the price paid by the plaintiff, for the liquor, and constituted a part of it, and they would continue to do so in all subsequent sales, till they were

ultimately paid by the consumer. The case of *Brown* v. *Maryland*, 12 Wheat. 410, and the *License Cases*, 5 How. (U. S.) 504, do not conflict with this view. They merely decide that the importer may sell the imported article in the form and shape in which it was imported. This would sustain the sale by Wilson to the plaintiff, but would not authorize the plaintiff to consign the article to the defendant to be sold by him in violation of the laws of this state. *Exceptions overruled.*